Wheeler v D'Antonio (2025 NY Slip Op 25196)

[*1]

Wheeler v D'Antonio

2025 NY Slip Op 25196

Decided on August 22, 2025

City Court Of Syracuse, Onondaga County

Tadros, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 22, 2025
City Court of Syracuse, Onondaga County

Margaret Wheeler and Dawn Kowalik, Petitioners,

against
Justin D'Antonio and Hamdan Homes Co. LLC, Respondents.

Index No. LT-1226-25/SY

For Petitioners:
Margaret Wheeler, Pro se
Dawn Kowalik, Pro se
For Respondents:
Anthony C. Galli, Esq.
Attorney for HamDan Homes, LLC and Justin D'Antonio
Galli Law, PLLC
6555 Ridings Road
Syracuse, New York 13206

Shadia Tadros, J.

Petitioners filed a Notice of Petition and Petition on May 29, 2025, pursuant to Real Property Actions and Proceedings Law, (RPAPL) Article 7-D. RPAPL Article 7D codified as §§ 797-797-j, known as the "Tenant Dignity and Safe Housing Act," provides a simplified summary proceeding for tenants outside of New York City to bring actions against landlords for habitability and state and local housing code violations.
 Findings of Fact
Petitioners Dawn Kowalik and Margaret Wheeler had been tenants of 201 John Street apartment B since October 2023, their unit consisting of a two-bedroom unit in 4-unit structure. Petitioners commenced this 7-D proceeding against HamDan Homes, LLC, and Justin D'Antonio (Respondents), on May 29, 2025, and subsequently served Respondents with the petition on June 3rd and 4th, 2025.
Respondent HamDan Homes, LLC, purchased the subject property on or about February 2024, and Justin D'Antonio is a member of, and property manager for the LLC. Respondents filed a holdover proceeding on May 9, 2025, seeking to evict Petitioners.
Petitioners brought this special proceeding alleging habitability issues and seeking corrective action and repairs including but not limited to: roach and mice infestation; mold in bathroom and around tub; unusable appliances due to infestation; electrical issues and loss of power; plumbing issues including water leaks and compromised ceilings and floors; and inoperable porch stairs and railing. The property also had several city code violations issued March 31, 2025, after Petitioners contacted Code Enforcement. Petitioners sought a corrective order regarding necessary home repairs; an abatement of rent during such corrective action; a refund of rent paid for reduced value of rental property; and relief on the pending holdover proceeding.
The Court held a hearing on June 13, 2025, and found that Respondents are the properly named parties and Petitioners had proven their prima facie case against Respondents regarding the underlying conditions. The Court issued an Order to Correct, abated the current rent to $0, and set the matter down for a Compliance and Habitability hearing on July 14, 2025.

Real Property Law § 235-b Habitability and Housing Code Violations

Real Property Law § 235-b implies a residential warranty of habitability, in that tenants shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. Landlords have a legal obligation to provide tenants with a safe and habitable living space, ensuring the property is structurally sound, has functioning plumbing and electricity, and is free from health hazards like mold or vermin. This obligation is a fundamental part of New York State Landlord Tenant Law and applies even if it is not explicitly written in a lease.
Petitioners testified to living with rodent and roach infestation, soft spots and holes in the kitchen floor, and electrical issues, which existed prior to Respondents purchase of the property. On several occasions, Petitioners requested that the landlord and/or his agent, Mr. James Harris, make repairs. Mr. Harris testified he had made repairs to the kitchen floor where it was "caving in" in early June 2025. He testified that he noticed there were roaches in Petitioners' apartment when he was replacing the floor, and that he had seen dead mice in Petitioners' kitchen, bathroom, and smelled one in Petitioners' stove. Mr. Harris testified there were times when he was told to hold off on repairs as Respondents were short on funds, and that it was only earlier this year when Respondents started authorizing repairs.
Respondents submitted pest control receipts and reports documenting roach and rodent extermination was performed in March 2024, on all four units in the building. There was considerable rodent infestation of the basement and Petitioners' unit due to holes in the floor of their first-floor apartment. Testimony and the reports of the pest control company show that there were many holes in the exterior for vermin and pests to enter the building. A second follow-up roach treatment of Petitioners' unit was recommended in March 2024, but the next documented roach extermination did not occur until June 13, 2025, ten days after Respondents [*2]were served with the 7-D petition.
Although the service address for HamDan Homes, LLC, is Respondent D'Antonio's personal address, he testified that he was not aware of the code violations issued on March 31, 2025, until the 7-D action was filed. Respondent D'Antonio testified the issues cited in the code violations existed when the property was purchased, and because the City had issued a Certificate of Compliance, he believed that was the City's "stamp of approval that the property was good as is." Respondent D'Antonio testified he did not consider the issues as safety concerns or habitability issues and told Petitioners he was not going to fix them.

Holdover and Retaliation Real Property Law § 223-b

Real Property Law (RPL) § 223—b entitled "Retaliation by landlord against tenant" states in relevant part that a landlord shall not commence a proceeding to recover real property in retaliation for actions taken in good faith by a tenant to enforce rights under the lease or law of the State of New York regulating residential premises. A rebuttable presumption that the landlord is acting in retaliation shall be created if the tenant establishes that the landlord instituted an action or proceeding to recover possession, within one year after a good faith complaint was made, or good faith action was taken. RPL§ 223-b(5)(c) sets forth that the effect of the presumption shall be to require the landlord to establish a non-retaliatory motive for his acts by a preponderance of the evidence.
Petitioners began withholding rent in November 2024, and in January 2025, Respondents served Petitioners with a 90-day notice to vacate. Both parties presented text evidence that they discussed a lease renewal in February 2025 and provided documentation that Respondent D'Antonio filled out a Department of Social Services (DSS) Shelter Verification form on February 13, 2025. Petitioners contacted Code Enforcement in March 2025 regarding their habitability issues, and on March 31, 2025, code violations were issued on the property.
A finding of retaliation is not based on reports to Code Enforcement alone. Complaints made to landlords or their agents involving breach of warranty of habitability for issues of health and safety concerns can also be the basis for retaliation (RPL § 223-b(a)(1); RPL § 235-b). The text messages between Petitioners and Respondent D'Antonio document Petitioners' plea to remain in the apartment with promises of payment, and Respondent D'Antonio replying, "it is time to cut ties" and "there have been too many problems and its not worth his time or money."
Respondents did not overcome their burden to rebut the presumption of retaliation. Respondent D'Antonio insisted that the motive for not renewing the lease and filing the May 9, 2025, holdover petition was because Petitioners were rude, and he had too much trouble dealing with them. Respondent did file the DSS landlord verification form, but he testified that he only filled out the form to get Petitioners "off his back." This Court not only finds Respondent's actions retaliatory but also fraudulent. In filling out the DSS shelter verification form Respondent inflated the actual rent for the unit by over $3,000.00. Together, with Respondent D'Antonio being less than forthcoming about being a member of the LLC, as well as other inconsistencies in his testimony lead this Court to question Respondent D'Antonio's credibility.

Judgment/Order/Decision

Review of the testimony of both parties to the action and Respondents' witness, together with the photo evidence provided, clearly indicate the habitability concerns. The "soft" part of the kitchen floor in a traffic area, is a code violation and created a safety issue. Likewise, roach infestation is a well-documented health concern and code violation. Respondents took no corrective measures to cure these code violations and habitability issues until Petitioners filed [*3]the instant action. It is therefore the finding of this Court that Respondents breached the warranty of habitability as set forth in Real Property Law § 235-b, and filed a holdover petition in retaliation as defined in RPL § 223-b.
UPON consideration of the evidence and testimony presented, it is the judgment of this Court pursuant to RPAPL Law § 797-j, that it is hereby
ORDERED, that holdover action LT-1060-25 is dismissed; and it is further
ORDERED, that any rental arrears owed by Petitioners are abated to $0; and it is further
ORDERED, that Respondent HamDan Homes, LLC are to issue a refund of $3,500.00 to Petitioners for rent paid for the reduced value of the rental property and damages to Petitioners' furnishings and belongings.
ENTER.
HON. SHADIA TADROS
Syracuse City Court Judge
Dated: August 22, 2025
Syracuse, New York